IN THE UNITED STATES DISTRICT COURT FOR THE

DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| DELOMA CAMMARATA, | ) | |
| | ) | |
| Plaintiff, | ) | 8:08CV130 |
| | ) | |
| v. | ) | |
| | ) | |
| THE BOARD OF REGENTS OF THE | ) | MEMORANDUM OPINION |
| UNIVERSITY OF NEBRASKA, and | ) | |
| THE UNIVERSITY OF NEBRASKA | ) | |
| MEDICAL CENTER, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

This matter is before the Court on defendants' motion for summary judgment (Filing No. 34). The motion will be granted, and this matter will be dismissed with prejudice.

## I.   BACKGROUND

Plaintiff filed her complaint on March 28, 2008 (Filing No. 1). She alleges that defendants discriminated against her, and ultimately terminated her employment, because of her gender and age in violation of Title VII of the Civil Rights Act of 1964 ("Title VII") and the Age Discrimination in Employment Act ("ADEA"). (*Id.*) Plaintiff also alleges that her termination was improper retaliation.

On April 2, 2009, defendants filed their motion for summary judgment along with a brief and an index of evidence to support the motion (Filing Nos. 34, 35, and 45). After several extensions of time, plaintiff filed the Affidavit of Robert Green, who plaintiff identified as an expert (Filing No. 63).

Plaintiff did not submit any other documents in opposition to the motion for summary judgment.

The party seeking the entry of summary judgment in its favor must set forth "a separate statement of material facts as to which the moving party contends there is no genuine issue to be tried and that entitle the moving party to judgment as a matter of law." NECivR 56.1(a)(1). If the non-moving party opposes the motion, that party must "include in its [opposing] brief a concise response to the moving party's statement of material facts." NECivR 56.1(b)(1). Such response must "address each numbered paragraph in the movant's statement" of facts and must contain pinpoint citations to evidence supporting the opposition. *Id.* "Properly referenced material facts in the movant's statement will be deemed admitted unless controverted by the opposing party's response." *Id.*; *see also* Fed. R. Civ. P. 56(e)("A supporting or opposing affidavit must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated.").

The Court has carefully reviewed the documents submitted by both parties. Defendants submitted a statement of material facts in accordance with the Court's Local Rules. However, plaintiff has not submitted any "concise response" to those facts. Further, defendants submitted evidence which was properly

authenticated by affidavit.  Plaintiff has not.  This matter is deemed fully submitted and the undisputed material facts set forth by defendants in their brief are "deemed admitted" and are adopted below.

## II.  RELEVANT MATERIAL FACTS

1)  Plaintiff was employed as a Design Drafter at the University of Nebraska Medical Center ("UNMC") from October 2, 2000, until December 1, 2005.  On that date she became a Production Drafter.  On March 6, 2006, her title was changed to Design Drafter.  She was a Design Drafter until defendants terminated her employment on April 25, 2007 (Filing No. 36 at CM/ECF p. 1; Filing No. 38 at CM/ECF p. 3).

2)  Darren Dageforde ("Dageforde"), Manager of Engineering Services at the time of her employment, was plaintiff's immediate supervisor in October of 2000, when she began full-time employment as a Design Drafter in the Facilities Management and Planning Engineering Division (Filing No. 37 at CM/ECF p. 1).

3)  On May 14, 2004, for the time period of May 1, 2003, to May 1, 2004, plaintiff received an overall evaluation of 3, which means "meets requirements/too soon to evaluate." However, under Communication, she received a 2.5, which means "does not fully meet requirements, attention required."  (*Id.* at CM/ECF p. 2; Filing No. 43 at CM/ECF pp. 7-11.)

4)   For the period July 1, 2004, through June 30, 2005, Dageforde gave plaintiff a "below standard" evaluation in the area of her job duties having the following description: "Prepares detailed construction drawing and technical specifications for architectural and engineering projects to be constructed by in-house personnel or outside contractors on computer-aided drafting and design equipment."  In the evaluation under supervisory comments, Dageforde addressed plaintiff's concerns about pay and her desire to become a coordinator and provided her with suggestions for her advancement (Filing No. 37 at CM/ECF pp. 2-3; Filing No. 43 at CM/ECF pp. 21-25).

5)   Plaintiff disagreed with portions of Dageforde's evaluation, as shown in her response to the evaluation (Filing No. 37 at CM/ECF pp. 2-3; Filing No. 43 at CM/ECF pp. 26-30).

6)   In September of 2005, Dageforde developed a performance plan for plaintiff (Filing No. 37 at CM/ECF p. 3).

7) In addition, to give plaintiff a fresh start, she was placed under the supervision of Ronald Tietgen ("Tietgen"), Manager of Architectural Services, in November 2005.  Plaintiff asked for a change in her job title and a raise.  Plaintiff's job duties were evaluated by the UNMC Human Resources Department and resulted in a new job description dated December 7, 2005.  Plaintiff's position title at this time was Production Drafter.

On March 6, 2006, her position title was changed to Design Drafter I.  (*Id.*; Filing No. 36 at CM/ECF p. 1.)

       8)  At all times during her employment, plaintiff received a salary within the pay range for her pay grade (Filing No. 36 at CM/ECF p. 1).

       9)  Tietgen conducted a performance evaluation for plaintiff for the period from November 11, 2005, to May 1, 2006. Plaintiff's overall rating on that evaluation was 2.9, meaning "does not fully meet requirements, attention required."  In her comments to the evaluation, plaintiff stated the following about Tietgen:  "Ron Tietgen has been open and respectful to me during my evaluation.  I would like to say I appreciate this immensely and have found this lacking in the past with past evaluators.  I look forward to working with him in the future."  (Filing No. 43 at CM/ECF pp. 36-40; Filing No. 35 at CM/ECF p. 2.)

      10)  On June 12, 2006, Tietgen presented plaintiff with a written notice, which contained a written warning about plaintiff's performance (Filing No. 38 at CM/ECF p. 2; Filing No. 36 at CM/ECF pp. 1-2; Filing No. 39 at CM/ECF p. 1).

      11)  Plaintiff filed a grievance concerning the written notice.  She did not state in her grievance a complaint of sex or age discrimination or retaliation (Filing No. 42 at CM/ECF pp. 17-26).  Her grievance was denied.  (*Id.* at CM/ECF p. 27; Filing No. 38 at CM/ECF p. 2.)

12) On April 24, 2007, Dale Miller sent to plaintiff a letter notifying her of a pre-termination hearing scheduled for April 25, 2007, because termination of her employment was being considered for her failure to achieve and maintain an acceptable level of productivity for her position (Filing No. 42 at CM/ECF p. 31; Filing No. 39 at CM/ECF p. 2).

13) Following the pre-termination hearing, plaintiff was notified that she was being terminated from employment at UNMC (Filing No. 42 at CM/ECF p. 32; Filing No. 38 at CM/ECF p. 3).

14) Plaintiff filed a grievance relating to her termination. In the grievance, she raised sex as an issue (Filing No. 42 at CM/ECF pp. 33-36; Filing No. 40 at CM/ECF p. 1). The grievance committee denied her grievance (Filing No. 42 at CM/ECF p. 27; Filing No. 40 at CM/ECF p. 2). The Chancellor accepted the grievance committee's report (Filing No. 42 at CM/ECF p. 38).

15) While employed at UNMC, no one made any statements to plaintiff about her sex or age (Filing No. 41 at CM/ECF pp. 78-79).

16) Plaintiff filed a charge of discrimination based on sex, age, and retaliation, which was signed by her on May 4, 2007. On December 27, 2007, the EEOC mailed a Dismissal and Notice of Rights (Filing No. 1 at CM/ECF pp. 7-9).

### *III.     ANALYSIS*

#### A.   Standard of Review

Summary judgment should be granted only "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. Pro. 56(c); *see also Egan v. Wells Fargo Alarm Servs.*, 23 F.3d 1444, 1446 (8th Cir. 1994). It is not the court's function to weigh evidence in the summary judgment record to determine the truth of any factual issue. *Bell v. Conopco, Inc.*, 186 F.3d 1099, 1101 (8th Cir. 1999). In passing upon a motion for summary judgment, the district court must view the facts in the light most favorable to the party opposing the motion. *Dancy v. Hyster Co.*, 127 F.3d 649, 652 (8th Cir. 1997).

In order to withstand a motion for summary judgment, the nonmoving party must substantiate their allegations with "'sufficient probative evidence [that] would permit a finding in [their] favor on more than mere speculation, conjecture, or fantasy.'" *Moody v. St. Charles County*, 23 F.3d 1410, 1412 (8th Cir. 1994) (quoting *Gregory v. City of Rogers*, 974 F.2d 1006, 1010 (8th Cir. 1992)). "A mere scintilla of evidence is insufficient to avoid summary judgment." *Id.* Essentially the test is "whether the evidence presents a sufficient disagreement

to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).

### B. Plaintiff's ADEA Claim

"The University [of Nebraska] and its Board of Regents are agencies of the state . . ." *Shlien v. Bd. of Regents of the Univ. of Nebraska*, 640 N.W.2d 643, 648 (Neb. 2002); *see also Becker v. Univ. of Nebraska at Omaha*, 191 F.3d 904, 908-09 (8th Cir. 1999). States, and their agencies, enjoy Eleventh Amendment sovereign immunity from claims for money damages under the ADEA. *Kimel v. Florida Bd. of Regents*, 528 U.S. 62, 91-92 (2000); *Mustafa v. State of Nebraska Dep't of Corr. Servs.*, 196 F. Supp. 2d 945, 955-56 (D. Neb. 2002). Here, plaintiff seeks only monetary relief for her ADEA claims against defendants (Filing No. 1 at CM/ECF pp. 5-6). There is nothing before the Court showing that defendants have waived their sovereign immunity or have otherwise consented to federal court jurisdiction for ADEA claims. Plaintiff's ADEA claims are barred, and the Court will grant summary judgment in favor of defendants on plaintiff's ADEA claim.

### C. Plaintiff's Title VII Claim

Plaintiff also claims that she was terminated because of her sex in violation of Title VII (Filing No. 1). For the reasons stated below, plaintiff's discrimination claim fails

-8-

because she has not presented a sufficient prima facie case of discrimination.

Title VII, as amended, makes it unlawful for an employer "to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). To survive a motion for summary judgment, a plaintiff can demonstrate unlawful discrimination through either direct or indirect evidence. *Bearden v. Int'l Paper Co.*, 529 F.3d 828, 831 (8th Cir. 2008). Claims premised on indirect evidence are analyzed under the familiar burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Because plaintiff offers no evidence of direct discrimination, the Court will analyze his claims under the *McDonnell Douglas* framework.

### 1.   Standards for a Prima Facie Case

To set forth a prima facie case, plaintiff must establish that: (1) she is a member of a protected group; (2) she was qualified for her position; (3) she was discharged; and (4) her discharge occurred in circumstances giving rise to an inference of discrimination. *Johnson v. AT & T Corp.*, 422 F.3d 756, 761 (8th Cir. 2005). Construing the evidence submitted by defendants in a light most favorable to plaintiff, the Court

finds plaintiff has failed to establish a genuine issue of material fact as to the second and fourth elements.

      2.   Elements Two and Four of Plaintiff's Prima Facie Case

In order to set forth element two of a prima facie case, that she was qualified for the position, a plaintiff must show that she was "performing her duties in a way that met [the employer's] legitimate expectations." *Erenberg v. Methodist Hosp.*, 357 F.3d 787, 793 (8th Cir. 2004). Where it is undisputed that an employer identified "deficiencies in the employee's performance," those deficiencies were communicated to the employee such that the employee was "aware that she was not performing her duties in a way that met [the employer's] legitimate expectations," and the employee did not improve, summary judgment is appropriate. *Orluske v. Mercy Med. Ctr.*, 455 F. Supp. 2d 900, 916 (N.D. Iowa 2006) (citing *Erenberg*, 357 at 793); *see also Whitley v. Peer Review Sys., Inc.*, 221 F.3d 1053, 1055 (8th Cir. 2000) ("In determining whether or not [the plaintiff] was qualified for her position, we do not simply examine her ability to perform. Rather, [the plaintiff] must demonstrate that she was actually performing her job at a level that met her employer's legitimate expectations.").

Plaintiff was given poor performance evaluations for several years prior to her termination. Her evaluators noted that her performance was "below standard" in several areas

including communication, preparing construction drawings, and other duties (Filing No. 37 at CM/ECF pp. 1-3). In September 2005, more than 18 months prior to her termination, plaintiff was given a performance plan and a "fresh start" under a new supervisor. (*Id.* at CM/ECF p. 3.) She failed to improve her performance and productivity and was given a written warning to improve (Filing No. 38 at CM/ECF p. 2). When plaintiff still failed to improve her performance, she was scheduled for a pre-termination hearing and was ultimately terminated (Filing No. 42 at CM/ECF pp. 31-32). It was not until it was apparent to plaintiff that she was about to be terminated for her poor performance that she made her first claims relating to sex discrimination.[1] (*Id.* at CM/ECF pp. 33-36.) As set forth in the her evaluations, performance plan, written warning, pre-termination letter, and termination letter, plaintiff was terminated because of her long history of poor performance and low productivity. There is no evidence before the Court showing otherwise.

---

[1] The only reference plaintiff made to gender prior to her pre-termination hearing was in June 2005 when she stated that she felt Dageforde treated her differently because of her gender (Filing No. 37 at CM/ECF pp. 2-3). Dageforde explained that he treated professional staff, such as engineers, differently from technical staff, such as plaintiff. (*Id.*) Dageforde also offered to refer plaintiff to the appropriate personnel at human resources, and plaintiff declined that offer. (*Id.*)

-11-

Indeed, the only evidence submitted by plaintiff is the Affidavit of Robert Green, who plaintiff identifies as an expert (Filing No. 63). Mr. Green states that the department in which plaintiff worked "was not well managed or standardized" and that he generally believes that plaintiff's productivity was acceptable. (*Id.*)  While Mr. Green may be correct, the question is not whether the decision-maker was "factually correct in determining" whether the employee engaged in conduct resulting in termination, but whether the decision-maker "honestly believed" that the employee engaged in the conduct. *Johnson*, 422 F.3d at 762-63; *see also Montes v. Greater Twin Cities Youth Symphonies*, 540 F.3d 852, 859 (8th Cir. 2008) (citing *Johnson* and noting that the defendant's "perception" of the plaintiff's conduct was the applicable inquiry). Thus, even if plaintiff was "productive" by her own standards, the result is the same. Defendants may have been wrong to terminate plaintiff, and she (and Mr. Green) may disagree with the substance of the evaluations leading up to her termination, but plaintiff "must do more than raise doubts about the wisdom and fairness of [these] opinions and actions." *Hervey v. County of Koochiching*, 527 F.3d 711, 725 (8th Cir. 2008). There simply is nothing in the evidence before the Court showing that she was qualified for her position or showing an inference of discrimination in the circumstances leading up to plaintiff's termination. Plaintiff has therefore failed to set forth a

-12-

sufficient prima facie case and summary judgment is warranted on plaintiff's Title VII claims.

### D. **Plaintiff's Retaliation Claim**

To set forth a prima facie case of retaliation against an employer, "a plaintiff must show (1) [s]he engaged in protected conduct, (2) a reasonable employee would have found the challenged retaliatory action materially adverse, and (3) the materially adverse action was causally linked to the protected conduct." *Carpenter v. Con-Way Cent. Express, Inc.*, 481 F.3d 611, 618 (8th Cir. 2007). Engaging in a protected activity means that a plaintiff "either oppos[ed] an act of discrimination made unlawful by Title VII ("the opposition clause"), or participat[ed] in an investigation under Title VII ("the participation clause")." *Hunt v. Nebraska Public Power Dist.*, 282 F.3d 1021, 1028 (8th Cir. 2002). A plaintiff must do more than request a raise and a change to her job title in order to engage in a protected activity. She must also link the refusal to grant such requests to sex discrimination.

In this case, plaintiff has not shown that she engaged in a protected activity. While difficult to decipher, plaintiff's complaint alleges that she was subject to retaliation through her termination because she complained about her salary and job title in 2003 and again in 2005 (Filing No. 1 at CM/ECF pp. 2-3). The undisputed evidence shows that plaintiff requested

-13-

a raise in 2003 (Filing No. 41 at CM/ECF pp. 23-24). However, at the time her request was denied, she did not "attribute [defendants'] failure to give her a raise . . . to sex discrimination." *Hunt*, 282 F.3d at 1028. Thus, the 2003 request was not a protected activity and cannot form the basis of a retaliation claim.

The same is true of plaintiff's 2005 request. Approximately a year before her 2005 request for a raise, plaintiff received her first poor performance evaluation (Filing No. 43 at CM/ECF pp. 7-11). Plaintiff filed a four-page response to that poor performance evaluation. (*Id.* at CM/ECF pp. 12-15.) Nowhere in her response did plaintiff mention anything relating to sex discrimination. (*Id.*) In November 2005, plaintiff requested the opportunity to discuss her salary and job description with Dageforde and Ron Schaefer. (*Id.* at CM/ECF p. 19.) Plaintiff thereafter attended two meetings and presented information that both men and women had higher salaries than she did. (*Id.* at CM/ECF p. 20; Filing No. 41 at CM/ECF pp. 34-40.) Although defendants refused to give plaintiff a raise, she did not complain that her failure to obtain a raise was due to sex discrimination (Filing No. 41 at CM/ECF p. 40). Plaintiff continued to receive poor performance evaluations after being denied raises, however, she attributed these denials to Dageforde feeling that "money was tight" and "that he needed to justify why

[Plaintiff] wouldn't receive a raise." (Filing No. 43 at CM/ECF p. 34.) Plaintiff never attributed her failure to receive a raise or a new job title to sex discrimination. She has failed to meet her initial burden, and her retaliation claim fails.

For all of the foregoing reasons, plaintiff's complaint will be dismissed. A separate order will be entered in accordance with this memorandum opinion.

DATED this 13th day of October, 2009.

BY THE COURT:

/s/ Lyle E. Strom
_____
LYLE E. STROM, Senior Judge
United States District Court